UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMANTHA RING,

        Plaintiff,                        Case No.

vs.

CITY OF GULFPORT,

        Defendant.

_____/

## COMPLAINT AND REQUEST FOR JURY TRIAL

COMES NOW, Plaintiff, SAMANTHA RING, and sues Defendant CITY OF GULFPORT, and alleges as follows:

### JURISDICTION & VENUE

1. This is a civil action for the denial of federally-secured rights under Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq*. ("ADA"); 42 U.S.C. § 12132.

2. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) as the Defendant exists in this District, the Plaintiff resides in this District, and the events that give rise to this cause of action arose in this District.

### PARTIES

4. Plaintiff SAMANTHA RING ("RING") is a resident of St. Petersburg, Florida.

5. Defendant CITY OF GULFPORT ("CITY OF GULFPORT") is a municipality organized and existing under the laws of the State of Florida and is and was at all time relevant herein a local government and public entity within the meaning of Title II of the ADA.

## FACTUAL ALLEGATIONS

6. RING is highly allergic to bee stings and sunflower seeds. When RING is stung by a bee or exposed to sunflower seeds, RING experiences a severe, life-threatening reaction known as anaphylactic shock. Her throat constricts and she has trouble breathing.

7. RING is an individual with a disability under 42 U.S.C. § 12102(1)(A), 28 CFR § 36.105(a)(1)(i).

8. In August of 2015, RING obtained a dog named "Piper." Piper is a border collie mix and has been individually trained to do work and perform tasks for the benefit of RING which assist RING with her specific disabilities.

9. Piper is a "service animal" under the ADA, 28 CFR § 36.104, and Fla. Stat. § 413.08(1)(d).

10. Piper warns RING of the presence of bees and catches and kills bees if they get close to RING.

11. At all times Ring carries a medical pack that contains RING's "EpiPen"[1] as well as a spare pair of prescription eyeglasses and back-up phone for use in case of an emergency.

12. Piper has been trained to locate RING's EpiPen if it is lost, and to retrieve the EpiPen upon command.

---

[1] The EpiPen is medication and a medication administration device used in emergencies to quickly treat very serious allergic reactions to insect stings/bites, foods, drugs, and other substances. One of its active ingredients is epinephrine which acts quickly to improve breathing, stimulate the heart, raise a dropping blood pressure, reverse hives, and reduce swelling of the face, lips, and throat.

13. Additionally, Piper seeks help if RING is unable to use her EpiPen during an allergy attack or other incapacitation triggered by RING's disabilities.

14. Piper is currently in training to alert RING to the presence of sunflower seeds.

15. In addition to being trained to perform disability-related tasks, Piper has earned the Canine Good Citizen title from the American Kennel Club.

16. Because of her life-threatening allergies, RING is a qualified individual with a disability.

17. CITY OF GULPORT leases a waterfront parcel of land containing a clubhouse and parking area to a Florida Non-Profit Corporation known as Boca Ciega Yacht Club, Inc. ("BCYC") for one dollar ($1.00) per year.

18. CITY OF GULFPORT also provides 56 wet slips for the exclusive use of BCYC's members, and 50 dry storage slips for the exclusive use of BCYC's members. The Lease is attached, marked, and incorporated herein as "Exhibit A" and is hereafter referred to as "Lease Agreement" and/or "Lease."

19. The thirteen (13) year Lease term is due to expire December 31, 2020.

20. The CITY OF GULFPORT is obligated to ensure that each service, program, and activity at and on its waterfront parcel of land containing the clubhouse and parking area are readily accessible to individuals with disabilities.

21. Ring joined BCYC in 2004 and was a member until she was expelled in 2019.

22. BCYC and CITY OF GULFPORT are fully aware that Piper is a service animal that provides disability-related assistance to RING.

23. BCYC and CITY OF GULFPORT are also fully aware that RING wishes to be able to be accompanied by Piper when RING uses the clubhouse BCYC leases from the CITY OF GULFPORT.

24. BCYC refused to allow RING to be accompanied by Piper when in the leased clubhouse.

25. On July 16, 2018, RING provided medical documentation of her disability-related need to be accompanied by Piper to BCYC then-Commodore Larry Brown.[2] (The 07/15/2018 "Service Animal/Medical Need Letter" from Andres Santayana, M.D., is attached, marked, and incorporated herein as "Exhibit B.")

26. Instead of ceasing its discriminatory actions after being provided medical documentation verifying RING's disability-related need for her service animal, BCYC after some self-lawyering that consisted of an on-line Google search, informed RING that BCYC is exempt from the ADA because it is a "private club" and is therefore free to exclude service animals from its leased premises. (*See generally* 12/23/2018 "Written Reprimand" which is marked, attached, and incorporated herein as "Exhibit C.")

27. BCYC is not a "private club" for purposes of being exempt from the ADA.

28. Through the Lease Agreement, BCYC operates under the control of the CITY OF GULFPORT. *See* Exhibit A.

29. Through the Lease Agreement, BCYC operates at the direction of the CITY OF GULFPORT. *Id.*

30. BCYC hosts, sponsors, markets, operates, manages, holds, and supports services, programs, and activities.

31. BCYC itself is a program and/or service.

32. Through the Lease Agreement and/or by virtue of having a special arrangement with BCYC and/or by allowing BCYC on and to operate from land, premises, and facilities it owns,

---

[2] Larry Brown was succeeded as BCYC's Commodore in 2019 by Nick Southard.

the CITY OF GULFPORT promotes, hosts, sponsors, markets, operates, manages, holds, and supports services, programs, and activities.

33. CITY OF GULFPORT also proactively promotes and advertises BCYC's activities and events on the CITY OF GULFPORT's website and in its weekly e-newsletters, and allows BCYC use of the CITY OF GULFPORT's Casino Ballroom.

34. On December 23, 2018, RING received a written reprimand from BCYC Commodore Larry Brown for being in the clubhouse with her service animal.

35. Because BCYC refused to allow RING the same access to the clubhouse as non-disabled members, even after RING provided medical verification of her disability, RING filed an administrative complaint with the Pinellas County Office of Human Rights ("PCOHR") on or about January 2, 2019.

36. Additionally, on January 3, 3019, RING reported, in writing, to the CITY OF GULFPORT's City Manager, Jim O'Reilly ("CITY MANAGER"), that her service animal had been excluded from the clubhouse leased from the CITY OF GULFPORT and BCYC's assertion that it is a "private club" and thus free to discriminate. (1/3/2019 email is marked, attached, and incorporated herein as "Exhibit D.")

37. On January 8, 2019, the CITY MANAGER met with BCYC Commodore Nick Southard[3] putatively regarding RING's report of exclusion.

38. On January 12, 2019, the CITY MANAGER emailed the CITY OF GULFPORT's Mayor, Sam Henderson ("MAYOR"), stating that he (the CITY MANAGER) had "*explained to him [Nick Southard] that (sic) needed to explore remedy (sic) b efore the City becomes involved*

---

[3] See note 2, *supra*.

*via being the Club's landlord.*" (1/12/2019 email is marked, attached, and incorporated herein as "Exhibit E.")

39. On January 12, 2019, RING also reported to the MAYOR of the CITY OF GULFPORT, in writing, that even after BCYC had been provided medical information verifying her need for a service animal, BCYC sent her a letter of reprimand stating that she would be fined $150.00 if she brought her service dog into the leased clubhouse. The MAYOR replied:

> *Thanks for letting me know. I have heard about this, and we are determining if they have the ability to do this. Since the city owns the property, I believe we have influence in this, and I would like to see them change the policy on their own. Working on it.*

(1/12/2019 MAYOR email is marked, attached, and incorporated herein as "Exhibit F.")

40. On January 13, 2019, the MAYOR asked the CITY MANAGER via email: "*How can someone leasing municipal property not comply with the rules that we as a city have to follow?*" (1/13/2019 MAYOR email is marked, attached, and incorporated herein as "Exhibit G.")

41. After BCYC learned of RING's communication with the CITY OF GULFPORT, BCYC immediately engaged in illegal retaliation against RING. BCYC's retaliatory conduct includes:

a) Altering the minutes of BCYC's December 2018 meeting after learning of the discrimination complaint to reflect alleged complaints BCYC claimed to have received regarding RING's service animal "Piper." RING had never been informed of any complaints regarding Piper.

b) Fining RING $150.00 for having her service dog in the clubhouse on January 22, 2019. (01/22/2019 "Notice of Fine" is marked, attached, and incorporated herein as "Exhibit H.")

c) Hiring a private investigator to investigate RING to find a pretextual basis to remove her from the club.

6

d) Calling for an emergency meeting to suspend RING from the club, while refusing to inform RING of the basis for the motion. (*See generally* Motion for Suspension which is marked, attached, and incorporated herein as "Exhibit I.")

e) Suspending RING from BCYC on March 14, 2019, for reasons that were wholly pretextual and/or contrived.

f) Refusing to allow RING to be accompanied by her service dog at the meetings at which her suspension and expulsion were discussed.

g) Targeting RING with expulsion from BCYC. (3/19/2019 Letter is marked, attached, and incorporated herein as "Exhibit J.")

h) Organizing and implementing a phone bank to influence BCYC members to vote to expel RING.

i) Creating a written "script" to be used by members during the phone campaign which intentionally portrayed RING in a negative light.

j) Expelling RING from BCYC on April 19, 2019, for reasons that were entirely pretextual and/or contrived.

42. RING was excluded from participation in and denied the benefits of the BCYC's/CITY OF GULFPORT's services, programs, and activities and was otherwise subjected to discrimination by it by reason of her disability.

43. RING repeatedly contacted BCYC's lessor, CITY OF GULFPORT, regarding the illegal disability discrimination and retaliation she was experiencing on city-owned land in hopes of enlisting assistance from the CITY OF GULFPORT.

44. At all times relevant herein, the CITY OF GULFPORT was "contacted" through its Mayor, City Manager, and/or other person(s) enjoying substantial supervisory authority within the CITY OF GULFPORT's chain of command.

45. THE CITY OF GULFPORT wholly ignored both RING's request for assistance and BCYC's discrimination, and disregarded RING's plight suffered as a result of BCYC's illegal disability discrimination and retaliation.

46. THE CITY OF GULFPORT perpetuated, encouraged, and facilitated BCYC's actions thereby engaging in disability discrimination and retaliation.

47. As of the date of this filing THE CITY OF GULFPORT has failed to take any action to disavow BCYC of the notion that BCYC is free to use publicly owned land belonging to THE CITY OF GULFPORT to operate a "private club" that discriminates against people with disabilities.

48. RING retained Attorney Marcy I. LaHart ("RING's counsel") to represent her in protecting her right to be free from discrimination and enjoy equal access to the amenities provided by BCYC pursuant to its lease from the CITY OF GULFPORT.

49. On April 18, 2019, RING's counsel made a formal demand to the CITY OF GULFPORT for the CITY OF GULFPORT to address the discriminatory and retaliatory acts taking place on city property BCYC leases from the CITY OF GULFPORT. (RING's counsel's 4/18/2019 correspondence is marked, attached, and incorporated herein as "Exhibit K.")

50. The CITY OF GULFPORT did not require its lessee to comply with the ADA.

51. Instead, the CITY OF GULFPORT requested RING's counsel provide additional information regarding RING's disability as well as "*documentation that Ms. Rings' (sic) dog is a service animal pursuant to the Americans with Disabilities Act*" while concurrently citing an

inapplicable City Ordinance which the CITY OF GULFPORT's attorney averred "*provides that the City of Gulfport, upon the filing of your lawsuit, defers to the appropriate governmental agency and will not pursue the complaint.*" (CITY OF GULFPORT's 4/23/19 correspondence is marked, attached, and incorporated herein as "Exhibit L.")

52. RING, through counsel, provided the CITY OF GULFPORT all information it requested.

53. Even after receiving all information it demanded of RING, the CITY OF GULFPORT still failed to address BCYC's illegal discrimination and retaliation against RING.

54. Without conducting any independent investigation of BCYC's actions or contentions, the CITY ignored RING, her counsel, and the illegal discrimination, hollowly stating instead: "*The yacht club has stated that they have legitimate nondiscriminatory reasons for Ms. Rings' [sic] expulsion as a member. They have also asserted that Ms. Rings' [sic] dog on several occasions was aggressive to other members and the aggression was witnessed by several people.*" (CITY OF GULFPORT's 4/26/19 correspondence is marked, attached, and incorporated herein as "Exhibit M.")

55. RING's counsel inquired as to why the CITY OF GULFPORT was taking BCYC's mere word over RING's but did not enjoy the courtesy of a response.

56. RING's counsel provided the CITY OF GULFPORT a copy of Piper's Canine Good Citizen Certification, which was apparently insufficient to encourage the CITY OF GULFPORT to further investigate RING's complaint rather than blindly accept BCYC's blatant misrepresentations.

57. On June 5, 2019, the PCOHR issued an investigative report finding that BCYC is not exempt from the ADA as a private club and stating that there is reasonable cause to believe that

BCYC unlawfully discriminated against and retaliated against RING. (PCOHR 6/5/2019 Letter of Determination is marked, attached, and incorporated herein as "Exhibit N.")

58. The PCOHR investigative report was provided to the CITY OF GULFPORT.

59. The CITY OF GULFPORT took no action in response to the PCOHR investigative report.

60. The CITY OF GULFPORT continues to passively and proactively perpetuate, encourage, and facilitate BCYC's actions and BCYC activities.

61. RING wishes to be reinstated as a member of the BCYC.

62. RING wishes to be able to visit the property leased by the CITY OF GULFPORT to BCYC so that RING can enjoy the benefits of the services, programs, and activities that take place on that property.

63. In this action RING seeks damages and an injunction to protect the rights of disabled persons, including RING, to be accompanied by a service dog.

64. In this action RING also seeks damages and an injunction to protect the rights of disabled persons, including RING, to be free from retaliation for reporting discriminatory conduct.

65. RING has retained the undersigned to represent her in this cause and seeks an award of attorney's fees and costs for bringing this matter and incurred in protecting her Civil Rights.

**COUNT I**
**CITY OF GULFPORT'S VIOLATION OF TITLE II OF THE ADA**

66. Plaintiff re-alleges and incorporates each of the above paragraphs numbered 1 through 65, as if fully set forth herein.

67. RING is a "qualified individual with disabilities" within the meaning of the Title II of the ADA, 42 U.S.C. §§ 12102 and 12131(2), and 28 C.F.R. § 35.105(a)(1)(i).

68. CITY OF GULFPORT is a public entity within the meaning of Title II, 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

69. CITY OF GULFPORT leases a prime piece of water-front property valued at millions of dollars to BCYC for the token amount of one dollar ($1.00) per year.

70. By providing waterfront property BCYC for only a dollar per year, CITY OF GULFPORT is providing significant assistance to BCYC.

71. CITY OF GULFPORT was given notice of and is aware that BCYC was provided medical documentation of RING's disability-related need to be accompanied by Piper, her service animal.

72. CITY OF GULFPORT also requested and was itself given medical documentation and verification of RING's disability-related need to be accompanied by her service animal.

73. CITY OF GULFPORT was given notice of and is aware that RING has been excluded from the clubhouse when accompanied by Piper and fined for bringing Piper into the clubhouse.

74. CITY OF GULFPORT was given notice of and is aware that RING was suspended and then expelled from BCYC in retaliation for complaining about being discriminated against.

75. CITY OF GULFPORT was given notice of and is aware of BCYC's violations of the ADA.

76. CITY OF GULFPORT has not responded to the notices or reports of BCYC's actions resulting in RING's discrimination.

77. CITY OF GULPORT has failed to take any action to require its tenant, BCYC, to comply with the ADA.

78. CITY OF GULFPORT has failed to take action to assist RING in having equal access to the premises rented to BCYC or to prevent her from being expelled for pretextual and contrived reasons in retaliation for having filed a disability discrimination complaint.

79. Despite its knowledge of BCYC's discriminatory practices and retaliation, CITY OF GULFPORT proactively advertises and promotes BCYC activities and events on the CITY OF GULFPORT's website and in its weekly e-newsletters.

80. CITY OF GULFPORT is knowingly aiding and perpetuating discrimination against RING, a qualified individual with disabilities, by providing significant assistance to BCYC in violation of 28 CFR § 35.130.

81. CITY OF GULFPORT's actions and inactions are constructive and actual discrimination against RING and other persons with a disability in violation of federal and state laws.

82. CITY OF GULFPORT's actions described above constitute discrimination against RING and other individuals with disabilities by excluding them from participation in and denying them the benefits of the services, programs, and/or activities of the CITY OF GULFPORT, as prohibited by 42 U.S.C. §12132, *et seq*.

83. Because of the CITY OF GULFPORT's actions and/or inactions, RING was excluded from full participation in or otherwise denied the benefits of the CITY OF GULFPORT's services, programs, properties, or was otherwise discriminated against by the CITY OF GULFPORT and that exclusion, denial of benefit, and/or discrimination was by reason of RING's disability.

84. CITY OF GULFPORT acted intentionally, willfully, and in disregard for RING's rights.

85. By ignoring, disregarding, and otherwise not acting upon RING's pleas and requests for intervention and assistance, the CITY OF GULFPORT was deliberately indifferent to the illegal discrimination perpetuated by BCYC.

86. By ignoring, disregarding, and otherwise not acting upon RING's pleas and requests for intervention and assistance, the CITY OF GULFPORT exhibited and engaged in discriminatory animus to the illegal discrimination perpetuated by BCYC.

87. CITY OF GULFPORT knew that harm to a federal protected right was substantially likely and failed to act on that likelihood.

88. CITY OF GULFPORT negligently and intentionally discriminated against the RING.

89. At all times, CITY OF GULFPORT Mayor, Manager, and/or other person(s) enjoying substantial supervisory authority within the CITY OF GULFPORT's chain of command who had complete discretion at a key decision point in the administrative process knew that BCYC failed to accommodate RING's disability-related need for her service animal to accompany her at and on BCYC's facilities; had the authority to order, directly or indirectly, BCYC to accommodate RING's disability-related need for her service animal; and was deliberately indifferent to BCYC's failure to accommodate RING's disability-related need.

90. RING is a victim of CITY OF GULPORT's discriminatory conduct and is an "aggrieved person" under the ADA, 42 U.S.C. § 12203(c), and suffered an injury-in-fact.

91. RING, sometime after her expulsion by BCYC and during what she believed was a hurricane situation, sought to dock her boat on the land/dock/premises/facilities CITY OF GULPORT owns and leases to BCYC and was denied access by BCYC.

92. RING has sought reinstatement to BCYC and has been denied; since her expulsion RING has sought access to the land/dock/premises/facilities CITY OF GULFPORT owns and leases to

BCYC as a visitor, as a guest, and as a member of the general public and been denied access by BCYC. RING wishes to be reinstated as a BCYC member and otherwise intends to return to the land/dock/premises/facilities CITY OF GULFPORT owns and leases to BCYC in some capacity.

93. RING continues to suffer an injury-in-fact by the following, any one of which will be immediately redressed by a favorable decision from this Court:

   a. her forced exclusion from and use of the land, dock, premises, and facilities the CITY OF GULFPORT owns and leases to BCYC;

   b. her forced exclusion from BCYC and the services programs and activities it hosts, sponsors, markets, operates, manages, holds;

   c. her forced exclusion from CITY OF GULFPORT services, programs, and activities;

   d. her forced exclusion from Gulfport Community services, programs, and activities;

   e. her pariah treatment from and by BCYC members and the Gulfport community; and

   f. her pariah treatment from and by, and/or estrangement in her relationships with, friends, members of BCYC, and Gulfport community acquaintances resulting from the targeting, harassment, and retaliation of her friends and members of BCYC who associate with her by BCYC.

   **WHEREFORE**, Plaintiff, SAMANTHA RING, respectfully requests the Court issue an ORDER:

a. Declaring that the Defendant CITY OF GULFPORT's actions violate the Americans with Disabilities Act ("ADA") and its implementing regulations;

b. Enjoining the Defendant CITY OF GULFPORT, its officers, employees, agents, representatives, spokespersons, successors, volunteers, tenants, lessees, and all other persons in

active concert or participation with it, from providing significant assistance to organizations that illegally discriminate against persons with disabilities;

c.  Ordering the Defendant CITY OF GULFPORT to ensure its lessees comply with the Americans with Disabilities Act, including steps to cease and prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of its unlawful practices described herein;

d.  Ordering the Defendant CITY OF GULFPORT to take all affirmative steps necessary to restore RING, as nearly as practicable, to the position she would have been in but for BCYC's discriminatory conduct;

e.  Ordering the Defendant CITY OF GULFPORT to remit such damages as would fully compensate RING for her injuries caused by the CITY of GULPORT's discriminatory conduct, including, but not limited to, damages for emotional distress and humiliation; and

f.  Granting all other additional relief as the interests of justice may require.

**WHEREFORE,** RING demands judgment against the Defendant CITY OF GULFPORT for compensatory and non-compensatory damages, including but not limited, damages for emotional distress and humiliation, and for attorneys' fees and costs, as well as any other such relief as this Court deems just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

| | |
|---|---|
| MARCY I. LAHART, P.A. | VENZA LAW, PLLC |
| 207 SE Tuscawilla Road | 931 Village Boulevard, #905-322 |
| Micanopy, FL 32667 | West Palm Beach, FL 33409 |
| Telephone: (352) 545-7001 | office: (561) 596-6329 |

Facsimile: (888) 400-1464  
marcy@floridaanimallawyer.com

BY: *s/ Marcy I. LaHart*  
Marcy I. LaHart, Esq.  
Florida Bar No. 0967009  
*Counsel for Plaintiffs*

email: dvenza@venzalawpllc.com

BY: *s/Denese Venza*  
Denese Venza, Esq.  
Florida Bar No. 599220  
*Counsel for Plaintiffs*