```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                           TAMPA DIVISION
```

SAMANTHA RING,

    Plaintiff,

v.                              Case No.: 8:20-cv-593-T-33CPT

CITY OF GULFPORT,

    Defendant.
_____/

### ORDER

This matter comes before the Court sua sponte. For the reasons explained below, after due consideration, the Court will stay this case pending the Eleventh Circuit's determination in the pending appeal of <u>Ring v. Boca Ciega Yacht Club, Inc.</u>, Case No. 8:19-cv-772-T-33JSS (hereafter, "the BCYC Case").

### I.   Background

#### A.   Ring's allegations in the instant complaint

The facts underlying Ring's complaint in this matter are well known to both the Court and the parties due to the Court's prior rulings in the BCYC Case. A brief sketch of the allegations in Ring's complaint will therefore suffice.

According to the complaint, Ring was formerly a member of Boca Ciega Yacht Club ("BCYC"). (Doc. # 1 at ¶ 21). BCYC

is located within the City of Gulfport, and the City leases a waterfront parcel of land to BCYC for $1.00 per year. (Id. at ¶ 17). In addition, the City provides both wet and dry storage slips for the exclusive use of BCYC members. (Id. at ¶ 18).

Ring alleges that she is "highly allergic" to bee stings and sunflower seeds. (Id. at ¶ 6). In 2015, Ring acquired a dog named Piper, and Piper assists Ring with her disabilities. (Id. at ¶ 8). Ring alleges that Piper is a service animal. (Id. at ¶ 9). When Ring attempted to bring Piper onto the BCYC premises, BCYC informed Ring that it was a private club and requested that she cease bringing Piper to the club as it was against club rules. (Id. at ¶¶ 24-26).

In early 2019, Ring filed an administrative complaint against BCYC with a local human-rights agency. (Id. at ¶ 35). And on January 3, 2019, Ring sent an email to Gulfport's City Manager, Jim O'Reilly, that Piper had been excluded from the BCYC clubhouse. (Id. at ¶ 36). City officials then engaged in discussions with BCYC about Ring's complaint. (Id. at ¶¶ 38-40).

According to Ring, after BCYC learned of Ring's communication with the City, BCYC began to illegally retaliate against her, including: fining her for bringing

Piper to the clubhouse, hiring a private investigator to find pretextual reasons to suspend Ring from membership, suspending Ring's membership "for reasons that were wholly pretextual," and lobbying other BCYC members to vote for Ring's expulsion. (Id. at ¶ 41). BCYC expelled Ring in April 2019. (Id. at ¶ 41(j)).

Ring alleges that, by "virtue of having a special arrangement with BCYC and/or by allowing BCYC to operate from land [or] premises" owned by the City, the City promotes, sponsors, manages, or otherwise supports BCYC's services, programs, and activities. (Id. at ¶ 32). She further alleges that the City provides "significant assistance" to BCYC by leasing the property to the club for $1.00 per year. (Id. at ¶ 70).

Based on these allegations, Ring claims that the City violated Title II of the Americans with Disabilities Act (ADA). (Id. at 10-14). On May 6, 2020, the City filed a motion to dismiss Ring's complaint, which motion has been fully briefed. (Doc. ## 11, 17, 20). On June 11, 2020, the Court entered an order directing the parties to show cause as to why this instant matter should not be stayed pending the resolution of the appeal in the BCYC case. (Doc. # 21). Ring

3

responded in opposition to a stay (Doc. # 22), but the City did not respond to the show-cause order.

### B. Ring v. BCYC

On March 29, 2019, Ring initiated a lawsuit against BCYC. (BCYC Case, Doc. # 1). Pursuant to Ring's third amended complaint, and based on substantially identical allegations to those Ring brings here, Ring asserted the following causes of action against BCYC: (1) failure to make reasonable modifications, in violation of Title III of the ADA (Count I); (2) retaliation, in violation of the ADA (Count II); and (3) discrimination in violation of the Florida Civil Rights Act (FCRA) (Count III). See (BCYC Case, Doc. # 100).

On March 27, 2020, the Court granted summary judgment in favor of BCYC on all of Ring's claims. (BCYC Case, Doc. # 146). This Court determined that BCYC was a private club, and not a place of public accommodation.[1] (Id. at 40). Accordingly, the Court held that BCYC was exempt from the requirements of Title III of the ADA and the FCRA. (Id. at 41, 43). In addition, the Court granted summary judgment to BCYC on Ring's retaliation claim, determining that BCYC had

---

[1] The parties had previously agreed that whether BCYC qualifies for the private club exemption as a "public accommodation" under the ADA was a question of law for the Court to decide. (BCYC Case, Doc. # 145).

met its burden of showing that it expelled Ring from membership based on legitimate, non-discriminatory reasons. (Id. at 55). Relatedly, the Court determined that because Ring had failed to show a genuine issue of material fact as to whether her suspension and expulsion were based on her disability, her disability discrimination claims under the ADA and FCRA failed for that reason as well. (Id. at 57-58).

On April 24, 2020, Ring appealed the adverse summary judgment order to the Eleventh Circuit Court of Appeals, and that appeal remains pending. (BCYC Case, Doc. # 151). Ring filed her complaint in the instant case, against the City, on March 12, 2020, before this Court issued its summary judgment ruling in the BCYC Case.

## II.  Legal Standard

District courts are vested with broad discretion to stay proceedings, which authority is incidental to their inherent powers to control their dockets and the course of particular litigation. See, e.g., Clinton v. Jones, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the

causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc., 524 F.3d 1235, 1241 (11th Cir. 2008) ("[D]istrict courts have inherent, discretionary authority to issue stays in many circumstances").

In exercising this discretion, district courts will consider such factors as: "(1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court." Warren v. Cook Sales, Inc., No. CV 15-0603-WS-M, 2016 WL 10807227, at *1 (S.D. Ala. Mar. 10, 2016).

**III. Analysis**

As to the first factor, the litigation here is at an early stage. The motion to dismiss remains pending, which motion would be significantly impacted by the Eleventh Circuit's decision in the BCYC Case, as explained in greater detail below. Additionally, while the Court has entered a Case Management and Scheduling Order, the discovery deadline

is still four months away, and the trial term is nine months away.

As to the second factor, a consideration that courts often consider in whether a stay would unduly prejudice or tactically disadvantage a party is whether the stay would negatively impact discovery and the necessary accrual of documents and information. See Tomco Equip. Co. v. Se. Agri-Sys., Inc., 542 F. Supp. 2d 1303, 1307 (N.D. Ga. 2008) ("Many parties opposing the stay . . . do so because their discovery process will be made more difficult after the delay[.]").

Here, the Court is not persuaded that a stay pending the outcome of the appeal in the related case would unduly prejudice either party. At this juncture, the Court has determined that Ring should not receive her requested relief against BCYC, so there is no judgment that is being delayed. As the issues and witnesses significantly overlap between the instant case and the BCYC case, much of the discovery Ring and the City would seek in this case has already been disclosed and produced. Moreover, there is no indication that a stay for the duration of the appeal would cause any other discovery to disappear or become unduly difficult to obtain.

As to the third and fourth factors, which the Court will address in tandem, those factors weigh heavily in favor of a

7

stay in this case. While Ring urges that the outcome of the appeal in the BCYC Case does not influence the current case (Doc. # 22), the Court disagrees. One of the central tenets of the City's motion to dismiss in this case is that Ring's ADA claim is foreclosed by this Court's summary judgment order in the BCYC Case. For example, the City urges that because this Court already determined in the BCYC Case that Ring had not demonstrated a genuine dispute of material fact on the issue of whether her suspension and expulsion would not have occurred but for her disability, her ADA claim against the City – which is based on actions taken by BCYC – necessarily fails.[2] (Doc. # 11 at 12-13). In the same vein, the City seeks to strike numerous allegations in the instant complaint as inconsistent with this Court's summary judgment order in the BCYC Case. (Id. at 3-10).

The City also relies on a line from this Court's prior summary judgment order to argue that BCYC is not a "service,

---

[2] Specifically, this Court wrote that: "Ring has not demonstrated a reasonable dispute of material fact on the issue of whether BCYC's suspension and expulsion would not have occurred but for her disability. The record demonstrates that BCYC had many reasons for wanting to expel Ring, including that she had a pattern of violating club rules, was endangering their Lease with the City or, perhaps, was plainly disliked by many members. None of this establishes, however, that BCYC acted against Ring because of her disabilities." (BCYC Case, Doc. # 146 at 57).

program, activity, aid, or benefit of the City." (Id. at 13). The Court will merely note here, without deciding as to its significance in the current case, that as part of the multi-factor analysis it engaged in when deciding whether BCYC qualified for the private-club exemption under the ADA, it looked at BCYC membership's control over the operations of the establishment. (BCYC Case, Doc. # 146 at 31). As part of that analysis, the Court noted that: "While Ring points to BCYC's Lease with the City, there is no record evidence that the City, in fact, exercises control over BCYC's day-to-day operations. Ring has failed to direct this Court to any case in which the mere fact that a municipality leased land to an otherwise private organization was sufficient to destroy the organization's status as a private club." (Id.).

Here, waiting for the Eleventh Circuit's decision on Ring's appeal in the BCYC Case would simplify the issues in this case, streamline the trial, and would reduce the burden of litigation on both the parties and the Court. See Warren, 2016 WL 10807227, at *1. If, on the one hand, the Eleventh Circuit were to overturn this Court's determination that BCYC is a private club that is exempt from the ADA and/or its determination that Ring's disability was not the cause of her expulsion from BCYC, the City's primary argument in favor of

9

dismissal would become, at the very least, more difficult to maintain. If, on the other hand, the Eleventh Circuit upholds this Court's order, the Court would be able to move forward with assurance in addressing the City's arguments that allegations in the complaint should be stricken and/or dismissed due to its prior determination in the BCYC Case. As it stands now, the Court may rule in one fashion on the City's motion to dismiss, only to have the very underpinnings of that decision upended by a later decision from the Eleventh Circuit, forcing the Court and the parties to return to square one. This hardly serves the public interest in judicial efficiency and economy.

The Eleventh Circuit has approved of stays pending appellate resolution of a related case, especially where the related matter is likely to have a substantial or controlling effect on the claims and issues in the stayed case. Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist., 559 F.3d 1191, 1198 (11th Cir. 2009) ("In this case, however, the reason for the district court's stay was at least a good one, if not an excellent one: to await a federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues in the stayed case."). While the final decision on the issues of BCYC's status and Ring's expulsion

remain undecided and unclear, it would be a disservice to judicial economy and efficiency to move forward on Ring's case against the City. See Lopez v. Miami-Dade Cty., 145 F. Supp. 3d 1206, 1208 (S.D. Fla. 2015) ("Stays of proceedings can also promote judicial economy, reduce confusion and prejudice, and prevent possibly inconsistent resolutions."). For example, in Lopez, the district court stayed the case pending a forthcoming Supreme Court decision that would impact the Court's subject matter jurisdiction. See Id. (finding a stay was warranted to avoid unnecessary expenditures of time and resources and due to the public interest in judicial economy and efficiency).

Finally, the Court notes that Ring filed her notice of appeal in the BCYC Case on April 24, 2020. (BCYC Case, Doc. # 151). Thus, three months have already passed since the appeal made its way to the Eleventh Circuit, and there is no indication that the appeal will take an unusually lengthy amount of time to resolve. Thus, the Court does not believe that the scope or length of this stay is immoderate. Pinares v. United Techs. Corp., No. 10-80883-CIV, 2019 WL 8129287, at *2 (S.D. Fla. Feb. 12, 2019) (concluding stay pending appeal of related case was not immoderate under Eleventh Circuit precedent where they stay in that case "would end with one

ruling by the Eleventh Circuit, a court that would handle the appeal expediently, as opposed to a trial and appeal by a foreign court that was proceeding slowly").

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) This matter is hereby **STAYED** and **ADMINISTRATIVELY CLOSED** pending the Eleventh Circuit Court of Appeals' disposition of the pending appeal in Ring v. Boca Ciega Yacht Club, Inc., Case No. 8:19-cv-772-T-33JSS. The parties are directed to alert the Court when the Eleventh Circuit issues its opinion in that appeal.

(2) In light of the stay, the City of Gulfport's Motion to Dismiss (Doc. # 11) is **DENIED WITHOUT PREJUDICE** to the City's right to renew its Motion once the stay is lifted.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 9th day of July, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE